UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |  |
|---|---|---|
| T. MARK MACLIN, as Administrator *Ad Litem* of the Estate of David Smith, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. CV-10-S-137-NE |
| BILLY MITCHEM, *et al.*, | ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, T. Mark Maclin, who is proceeding as the Administrator *Ad Litem* of the Estate of David Smith, asserts a claim, pursuant to 42 U.S.C. § 1983, for deliberate indifference to his decedent's serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution against defendants Billy Mitchem, the Warden of the Limestone Correctional Facility in Limestone County, Alabama; Dr. William Hobbs, a physician at the Limestone Correctional Facility; Charles Hooper, a certified registered nurse practitioner at the Limestone Correctional Facility; Jimmy Galbreath, a Registered Nurse at the Limestone Correctional Facility; Jon Filyaw, a Licensed Practical Nurse at the Limestone Correctional Facility; Lawanda McLin, a Licensed Practical Nurse at the Limestone Correctional Facility; Yvrose Pierre-Pierre, a Registered Nurse at the

Limestone Correctional Facility; and Correctional Medical Services, Inc., the employer of defendants Hobbs, Hooper, Galbreath, Filyaw, McLin, and Pierre-Pierre.[1] The case currently is before the court on defendant Billy Mitchem's motion to dismiss for failure to state a claim upon which relief can be granted.[2]  Upon consideration of the motion, the pleadings, and the parties' briefs, the court concludes the motion is due to be granted.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).[3]  This rule must be read together with Rule 8(a),

---

[1] *See* doc. no. 18 (Amended Complaint).  Plaintiff also asserts supplemental state law claims for wrongful death caused by medical negligence, in violation of Alabama Code § 6-5-480 *et seq.* and Ala. Code § 6-5-540 *et seq.*, and for wrongful death caused by negligent and/or wanton hiring, training, supervision and retention, pursuant to Alabama common law, but those claims are not asserted against Warden Mitchem.

[2] Doc. no. 24.

[3] In full text, Rule 12(b) provides that:

Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

    (1) lack of subject-matter jurisdiction;

    (2) lack of personal jurisdiction;

    (3) improper venue;

    (4) insufficient process;

    (5) insufficient service of process;

which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (citations omitted).

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.
>
> To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted

---

(6) failure to state a claim upon which relief can be granted; and

(7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Fed. R. Civ. P. 12(b).

> unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Ashcroft*, 556 U.S. at —, 129 S. Ct. at 1949-50 (emphasis added).

Furthermore,

> this Circuit has tightened the application of Rule 8 in section 1983 cases where qualified immunity is at issue, like this one. In such cases, the "heightened pleading standard" applies and "[s]ome factual detail in the pleadings is necessary." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998); *see also Danley v. Allen*, 540 F.3d 1298, 1314 (11th Cir. 2008) ("Under the heightened pleading requirement, the relevant facts must be alleged with some specificity.") (internal quotation omitted). The purpose of the heightened pleading standard is for the plaintiff to provide facts with "sufficient detail for Defendants to understand what alleged rights were violated . . . and which of their actions allegedly violated those rights," as well as "for the court to determine whether those facts indeed set out a violation of rights and whether those rights were clearly established when these incidents occurred." *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009).

*Harper v. Lawrence County, Alabama,* 592 F.3d 1227, 1233 (11th Cir. 2010).[4]

## II. ALLEGATIONS OF PLAINTIFF'S AMENDED COMPLAINT[5]

Plaintiff's amended complaint contains the following factual allegations:

    16.    David Smith was 45 years old when he was incarcerated at Limestone Correctional Facility for theft of a used chainsaw.

    17.    On the morning of Wednesday, January 23, 2008, Mr. Smith was taken to the infirmary by a correctional officer. He was seen by

---

[4]Plaintiff spends four pages of his response brief discussing whether there is a heightened pleading standard for civil rights cases brought pursuant to 42 U.S.C. § 1983. After arguing the various advantages and disadvantages of such a standard, plaintiff concludes his discussion by stating that "the heightened pleading standard . . . is apparently the law of the circuit." Doc. no. 35 (plaintiff's brief), at 8-9 (citing *Harper v. Lawrence County,* 592 F.3d 1227 (11th Cir. 2010); *Danley v. Allen,* 540 F.3d 1298, 1313-14 (11th Cir. 2008)). Plaintiff's argument is the equivalent of briefing *dicta,* and it consequently need not be considered by this court. Even if the court were to indulge plaintiff's argument, however, the clear result of the analysis would be that the heightened pleading standard *does* apply, as is clearly set forth in *Harper.*

[5]As the motion to dismiss primarily addresses the factual sufficiency of the complaint, a full recitation of plaintiff's factual allegations is beneficial.

5

Defendant Filyaw. He reported "serious" chest pain, a sore throat, fever and that he was coughing blood. Defendant Filyaw referred Mr. Smith to Defendant Hooper. Defendant Hooper diagnosed Mr. Smith with bronchitis. Defendant Hooper signed as the Physician, and prescribed Mr. Smith certain medications including Augmentin.

18. Two days later, on January 26, 2008, Mr. Smith was again taken to the infirmary by a correctional officer. He was seen by Defendant McLin. He reported, and it was noted in the records, that he was too sick to go to the infirmary for his medication. Mr. Smith had a 101.3° fever and was coughing bloody mucous. Defendant McLin noted that Mr. Smith was to be evaluated by Defendant Galbreath. Defendant Galbreath gave him medication and recommended that Mr. Smith increase his fluid intake. He advised Mr. Smith about the times medications would be administered in the medical offices to inmates such as himself.

19. Early the following morning, on January 27, 2008, at 4:45 a.m., Mr. Smith was again taken to the infirmary by a correctional officer. He was seen by Defendant Pierre-Pierre. Mr. Smith reported that he could not breathe and could not walk and that he needed a wheelchair. It was noted by Defendant Pierre-Pierre that Mr. Smith had blood-tinged sputum but, she opined, that Mr. Smith showed no signs of respiratory distress. Mr. Smith was given his medication. His blood pressure was 90/60, his pulse was 127. Defendant Pierre-Pierre discharged Mr. Smith in "satisfactory" condition.

20. Approximately two hours later, on January 27, 2008, at approximately 6:35 a.m., Mr. Smith was again taken to the infirmary by a correctional officer. He was again seen by Defendant Pierre-Pierre. Mr. Smith was coughing into a towel soiled with bloody mucous. He reported that he had difficulty breathing and trouble getting in and out of bed. Defendant Galbreath was Mr. Smith's primary nurse. It was noted by Defendant Pierre-Pierre that Mr. Smith was "in no apparent distress." Defendant Pierre-Pierre administered "reassurance and comfort" and she instructed Mr. Smith to "take deep breaths." In less than eighteen hours, David Smith would be dead.

6

21. Defendant Galbreath noted at or around this time that Mr. Smith's respiration was "rapid and shallow" and he had rhonchi in [the] lower left lobe of his lung.

22. In none of Defendants' records is there mention of any additional testing, treatment, or interventions needed to treat Mr. Smith's rapidly-deteriorating condition. Mr. Smith was too sick to take his medications. However, he never received medications in his cell. He was never sent to a hospital. He never received intravenous antibiotics.

23. Sometime on January 27, 2008 (after Defendant Pierre-Pierre had sent Mr. Smith back to his cell in "no apparent distress") David Smith died.

24. Mr. Smith was found moments after midnight on January 28, 2008, at 12:10 a.m., in his cell. Mr. Smith was seen for the last time by Defendant Pierre-Pierre who noted that Defendant Hobbs was notified of Mr. Smith's condition and Defendant Hobbs (presumably by telephone) ordered cardio pulmonary resuscitation ceased at 12:30 a.m.

25. David Smith was pronounced dead at 1:40 a.m.

26. According to the Coroner's report of the autopsy performed on Mr. Smith, he died from acute staphylococcus aureus pneumonia in left lung "with early right lung involvement" and probable sepsis.

27. David Smith's death could have and should have been prevented had he been successfully treated by, among other things, being sent for further testing, administering the medications which were prescribed for him in a fashion which insured Mr. Smith ingested them, or being sent to a hospital for evaluation and/or treatment.[6]

Plaintiff also alleges the following with regard to defendant Billy Mitchem's involvement in the circumstances discussed above:

---

[6]Amended Complaint, at ¶¶ 16-27.

7

Defendant Billy Mitchem at all times relevant hereto, [sic] was the Warden at Limestone Correctional Facility. Warden Mitchem was responsible for the daily functioning and administration of Limestone Correctional Facility, including safe, secure and humane treatment of all prisoners incarcerated there. Warden Mitchem, and those working under his authority, were aware of, acquiesced in, and/or personally participated in, the unconstitutional deliberative indifference [sic] to David Smith's serious condition. He is sued in his individual capacity.[7]

Based upon these facts, plaintiff asserts the following legal allegations to support his deliberate indifference claim:

> 30. Defendants' policies, practices, acts and omissions placed David Smith at unreasonable and foreseeable risk for serious medical injury and death.
>
> 31. Defendants acted with deliberate indifference to Plaintiff's serious medical needs.
>
> 32. Defendants implemented, sanctioned, approved, ratified, and/or failed to remedy policies, practices, acts and omissions that denied, delayed and/or intentionally interfered with David Smith's health and safety.
>
> 33. Defendants' policies, practices, acts and/or omissions constituted deliberate indifference to the serious medical needs of David Smith and violated the Cruel and Unusual Punishments Clause of the Eighth Amendment, made applicable to the States through the Fourteenth Amendment to the United States Constitution. As a proximate result of Defendants' illegal and unconstitutional policies, practices, acts and omissions David Smith died.[8]

### III. DISCUSSION

---

[7] *Id.* at ¶ 7.
[8] *Id.* at ¶¶ 30-33.

Warden Mitchem asserts that he is entitled to qualified immunity from plaintiff's deliberate indifference claim against him. The doctrine of qualified immunity protects governmental officials who are sued under 42 U.S.C. § 1983 for money damages in their personal, or individual, capacities, but only so long as "their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts generally apply a two-part test for evaluating whether a defendant is entitled to qualified immunity. The "threshold question" for the district court to ask is whether the facts, viewed "in the light most favorable to the party asserting the injury," show that "the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201 (2001). If the threshold question is answered positively, the court will proceed to analyze the second aspect of the two-part inquiry: *i.e.,* "whether the right was clearly established." *Id.*[9]

"The Supreme Court says that prison officials will be liable for violating the

---

[9]The Supreme Court recently relieved lower courts from mandatory adherence to the order of the two-part analysis articulated in *Saucier*. *See Pearson v. Callahan*, – U.S. – , 129 S. Ct. 808, 818 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."). It is now within this court's discretion, in appropriate cases, to assume that a constitutional violation occurred for the purpose of addressing, in the first instance, whether such a violation would be "clearly established." *Id.* Even so, under the circumstances of the present case the tested sequence of analysis first prescribed in *Saucier* will be followed.

Eighth Amendment[10] when they are deliberately indifferent to the substantial risk of serious harm to inmates. Put differently, officials, to be liable, must be aware of a substantial risk of serious harm to the inmates and not take reasonable measures to alleviate that risk." *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1026-27 (11th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 843-44 (1994)). Further, "[a] plaintiff must also show that the constitutional violation caused his injuries." *Marsh,* 268 F.3d at 1028.

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court employed the "deliberate indifference" standard for determining when the failure to provide

---

[10]It is not entirely clear from the pleadings whether plaintiff intended to assert separate deliberate indifference claims under both the Eighth and Fourteenth Amendments, or whether he intended to assert solely an Eighth Amendment claim, and referenced the Fourteenth Amendment only because it incorporated the Eighth Amendment and applied it to the states. A review of plaintiff's complaint leads the court to believe that plaintiff intended to assert only an Eighth Amendment claim, and will treat the claim as such. *See* Amended Complaint, at ¶ 33 ("Defendants' policies, practices, acts and/or omissions constituted deliberate indifference to the serious medical needs of David Smith and violated the Cruel and Unusual Punishments Clause of the Eighth Amendment, made applicable to the States through the Fourteenth Amendment to the United States Constitution."). The distinction is a technical one, because deliberate indifference claims filed by convicted and incarcerated persons are governed by the Eighth Amendment, while deliberate indifference claims filed by pretrial detainees are governed by the Fourteenth Amendment. *See Andujar v. Rodriguez*, 486 F.3d 1199, 1203 n.3 (11th Cir. 2007) ("Claims of deliberate indifference to the serious medical needs of pretrial detainees are governed by the Fourteenth Amendment's Due Process Clause rather than by the Eighth Amendment's Cruel and Unusual Punishment Clause, which governs similar claims by convicted prisoners."). Even if the court has misinterpreted plaintiff's complaint, and plaintiff did intend to assert a separate Fourteenth Amendment claim, no harm will result, because the standard is the same for reviewing both Eighth and Fourteenth Amendment claims. *See Lancaster v. Monroe County*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997) (observing that Circuit precedent holds that "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner").

medical care to incarcerated prisoners rises to the level of a constitutional claim. "[D]enial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency . . . ." *Estelle*, 429 U.S. at 103-04. The standard announced in *Estelle* is three-pronged, and requires proof that the defendants against whom the claim is asserted possessed subjective knowledge of a risk of serious harm, but despite such knowledge, the defendants disregarded that risk by conduct that is more than gross negligence. *See Townsend v. Jefferson County,* – F.3d –, No. 08-15583, 2010 WL 1189540, *6 (11th Cir. Mar. 30, 2010) (clarifying that a showing of more than "gross" negligence is required, rather than a showing of "mere" negligence, as suggested by prior case law); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). The Court elaborated on what is required to prove deliberate indifference in *Farmer v. Brennan*, 511 U.S. 825 (1994), saying that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference . . . . An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but

11

> did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (citations omitted). Furthermore, "'[i]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual Defendant must be judged separately and on the basis of what that person knows.'" *Harper,* 592 F.3d at 1234 (quoting *Burnette v. Taylor,* 533 F.3d 1325, 1331 (11th Cir. 2008)).

Warden Mitchem argues that plaintiff's deliberate indifference claim against him must fail because plaintiff did not adequately allege that the Warden had any actual, subjective knowledge of a risk of serious harm to plaintiff; that the Warden actually engaged in any action or inaction that contributed to Mr. Smith's death; or that the Warden was responsible for any customs and/or policies that contributed to Mr. Smith's death.

The Eleventh Circuit's decision in *Harper v. Lawrence County, Alabama,* 592 F.3d 1227 (11th Cir. 2010), supports Warden Mitchem's argument. There, the personal representative of the estate of Mitchell Harper, a pretrial detainee who died in the Lawrence County, Alabama, jail, alleged that several defendants — including Sheriff Gene Mitchell and jail administrators Kenneth Mitchell and Mary Brown — were deliberately indifferent to his serious medical needs in violation of the Eighth

and Fourteenth Amendments to the United States Constitution because they failed to provide him with adequate medical care for the alcohol withdrawal symptoms he suffered in jail. *Id.* at 1230-31.

The Eleventh Circuit concluded that the plaintiff's allegations were insufficient to support an Eighth or Fourteenth Amendment claim against Gene Mitchell, Kenneth Mitchell, and Mary Brown, based upon those defendants' *personal participation* in any alleged violations. The Court stated as follows:

> Here, there are two main ways Plaintiff alleges Defendants knew of Harper's serious medical needs. First, Plaintiff claims that they "had full knowledge that Harper was an alcoholic who would experience delirium tremens (DT's) due to alcohol withdrawal if left untreated," because he had been arrested before and placed in the Lawrence County Jail on various alcohol-related charges. Compl. at 8. She also alleges that during the course of one or more of his prior arrests Harper "informed the defendants that he had a history of seizures due to alcohol withdrawal." *Id.* at 9. However, these allegations do not meet the Rule 8 standard, much less the heightened pleading standard. Plaintiff did not offer any facts to suggest why these Defendants in particular (a sheriff, two jail administrators, and two jailers) would know of Harper's specific medical history, nor did she offer any specific facts regarding Harper's past arrests. Moreover, even if those Defendants did know of Harper's history of alcoholism and/or past alcohol-related arrests, they would still have needed to know that Harper was in serious need of medical attention during the time period in question, April 24, 2007 to April 28, 2007. In our view, Plaintiff does not "raise [her] right to relief above the speculative level" in this instance. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.
>
> Second, Plaintiff claims Defendants were aware of Harper's condition because of his symptoms and behavior at the jail. Specifically,

13

>Plaintiff alleges that several days after his initial incarceration Harper was hallucinating, slurring his words, physically weak, and incoherent. According to the Complaint, Reed and/or Robinson told both Taylor and Fike that Harper was displaying erratic and strange behavior. Compl. at 7-8. The Complaint also alleges that other inmates informed Reed and Robinson that Harper was acting strangely, losing his balance, and had urinated on himself. *Id.* at 9. Based on these allegations we hold that Plaintiff adequately alleged Reed and Robinson had "actual knowledge" of the risk of serious harm to Harper if left untreated. However, the Complaint does not allege how the other three Defendants, Sheriff Gene Mitchell and administrators Kenneth Mitchell and Brown, could possibly have had such actual knowledge. Thus, the court should have dismissed the "personal participation" claims as to those three Defendants based on qualified immunity, and we reverse the district court's order in that respect.

*Id.* at 1234-35.

With regard to the Eighth and/or Fourteenth Amendment liability of Gene Mitchell, Kenneth Mitchell, and Brown *as supervisors,* however, the Court found that the plaintiff's allegations were sufficient.

>Supervisory liability lies where the defendant personally participates in the unconstitutional conduct or there is a causal connection between such conduct and the defendant's actions. There are three ways to establish such a causal connection:
>
>>when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and

14

>failed to stop them from doing so.

*Cottone* [*v. Jenne*], 326 F.3d [1352,] 1360-61 [(11th Cir. 2003)] (internal quotations omitted).

Here, because there are no allegations in the Complaint regarding the supervisors' personal participation in the denial of Harper's Fourteenth Amendment rights, we look to whether Plaintiff has alleged a "causal connection." Although Plaintiff does mention "widespread" constitutional rights deprivations (*see* Compl. at 16), it seems that the bulk of her facts against Gene Mitchell, Kenneth Mitchell, and Brown allege "causal connection" based on their customs or policies that resulted in harm to Harper. Specifically, Plaintiff alleges that those Defendants, who were responsible for the management and administration or oversight of the jail, had customs or policies of improperly screening inmates for alcohol withdrawal, improperly handling inmates addicted to alcohol or drugs, delaying medical treatment and restricting access to outside medical providers in order to save money, primarily using emergency medical treatment for physical injuries only, and also failing to train jailers in identifying inmates with alcohol dependency.

As factual support, the Complaint refers to an incident with Clyde O'Neal Parker, who was also a pretrial detainee in the Lawrence County Jail. The Parker incident is strikingly similar to this case — and occurred only one month before the Harper incident. According to that complaint, Parker was taken into custody on a DUI charge and did not receive a proper medical screening, which would have revealed his alcoholism and potential for suffering from withdrawal. The complaint states that Parker did in fact experience alcohol withdrawal but was not treated at the jail — even though Parker's wife informed jail personnel that Parker was an alcoholic and would need emergency treatment. The complaint states that a jailer informed Parker's daughter that Parker would not receive medical care because he was not "bleeding." Parker was eventually released to family members so that they could take him to a hospital for medical treatment. Parker ended up suffering brain damage. The Parker complaint contains similar allegations against the same three

15

>  supervisory Defendants as the Harper Complaint — that they maintained a custom or policy of improper medical screening, of burden-shifting medical treatment onto other entities out of financial concerns and "denying or delaying treatment for serious health conditions to save money." Parker Compl. at 8. The Parker complaint also sues jailers Reed and Robinson.
>
>  In sum, given the Complaint's factual detail about Harper's incident and the similar incident involving Parker just one month before, as well as the specific allegations regarding the customs or policies put in place by the supervisors, Plaintiff met both the Rule 8 and heightened pleading standards. Accordingly, we hold that Plaintiff sufficiently alleged that the supervisory Defendants violated Harper's Fourteenth Amendment rights based on their customs or policies.

*Harper,* 592 F.3d at 1236-37 (footnotes omitted).

In the present case, plaintiff provided much less detail about both Warden Mitchem's personal participation in the events leading to Mr. Smith's death, and his supervisory liability for the death. In *Harper,* the plaintiff at least provided *some* basis for the jail officials' alleged awareness of the decedent's health condition, *i.e.,* his prior incarcerations and his strange behavior. The problem was simply that there was nothing to connect the specific supervisory defendants — Gene Mitchell, Kenneth Mitchell, and Brown — to those purported "signs." In the present case plaintiff does not provide *any* factual detail about a potential link between Warden Mitchem's behavior and Mr. Smith's medical conditions. Instead, plaintiff summarily states that the Warden was aware of Mr. Smith's conditions, and that he acquiesced

16

and/or personally participated in "the unconstitutional deliberative indifference [sic] to [Mr. Smith's] serious condition."[11] Furthermore, unlike in *Harper,* the plaintiff in the present case did not identify any prior incident that could or should have placed Warden Mitchem on notice that his customs and/or policies would result in a constitutional violation.[12] Consequently, plaintiff has not sufficiently alleged a

---

[11]Amended Complaint, at ¶ 7.

[12]The court notes that, in this regard, plaintiff's complaint also contains less detail than the complaint in *Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008), a case relied upon by plaintiff here. In *Danley,* the plaintiff alleged

> sufficiently specific facts to establish the necessary causal connection between supervisors Rikard and Willis and the unconstitutional conduct of the jailers. Danley's complaint alleges that before this incident, Rikard and Willis had knowledge through "force reports and similar documents, inmate complaints, jailer complaints, attorney complaints, judicial officer complaints, and personal observation" that jailers at the Lauderdale Detention Center "regularly used pepper spray excessively as a means of punishment and not for legitimate reasons." The complaint also alleges that through the same sources, Rikard and Willis were aware that jailers at the detention center "regularly denied inmates prompt and adequate ventilation, decontamination, and medical care following pepper spray discharge as a means of punishment and not for legitimate reasons."
>
> The allegations are that, in spite of "numerous known incidents," Rikard and Willis took no action. They "did not discipline known incidents, and did not conduct additional training despite knowledge that pepper spray was being improperly used on a regular basis by jailers and that inmates were being denied proper treatment after spraying incidents." In addition, Rikard and Willis were aware, before the incident involving Danley, "of numerous such incidents on the shift on which Allyn, Wood, and Woods worked. Nevertheless, the jailers engaging in this pattern of abuse were not disciplined for their actions or provided with additional training."

*Danley,* 540 F.3d at 1315. The Eleventh Circuit found the plaintiff's allegations sufficient to support a claim for deliberate indifference based upon the status of Rikard and Willis as supervisors. In the present case, in contrast, plaintiff does not allege that Warden Mitchem had knowledge of any prior complaints or any prior failures to provide proper care.

deliberate indifference claim against Warden Mitchem based either on his personal participation or his supervisory liability.[13]

## IV. CONCLUSION AND ORDER

In accordance with the foregoing, the court finds that plaintiff's amended complaint fails to state a claim upon which relief can be granted against defendant Billy Mitchem. Accordingly, Mitchem's motion to dismiss is GRANTED, and all claims asserted against Mitchem are DISMISSED with prejudice. Plaintiff's case will proceed against all other defendants.

DONE this 19th day of April, 2010.

_____
United States District Judge

---

[13]Because there is no evidence to support a constitutional violation, the court need not reach the next stage of the qualified immunity analysis, *i.e.,* whether the rights at issue were clearly established at the time of the violation.